*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
February 17, 2022

v

No. 350395
Wayne Circuit Court
LC No. 19-001986-01-FC

FRANK ROMERO, JR.,

      Defendant-Appellant.

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and CAMERON, JJ.

PER CURIAM.

Defendant Frank Romero, Jr., was found guilty of two counts of armed robbery, MCL 750.529, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, following a bench trial. Defendant was sentenced to 3½ to 10 years' imprisonment for each count of armed robbery and to two years' imprisonment for each count of felony-firearm. We affirm defendant's convictions, but remand for resentencing and for the trial court to award the proper jail credit.

## I. BACKGROUND

This case arises from the armed robbery of Lisa Blackshear and her mother, Katie Thurmond. At about 6:45 p.m. on October 2, 2018, Blackshear and Thurmond arrived at the People's Community Apostolic Church (the church), which is located on the corner of Puritan Avenue and Tuller Street in Detroit, Michigan. Upon arrival, Blackshear parked her vehicle on Puritan Avenue. After she and Thurmond exited the vehicle, two men approached them.[1] One of the men, who was later identified by Blackshear as defendant, walked up to Blackshear and Thurmond and demanded their purses. Upon seeing that defendant had a handgun, Blackshear and Thurmond complied and handed defendant their purses. Blackshear and Thurmond ran into the church, and law enforcement was contacted. The police presented Blackshear and Thurmond

---

[1] The second man, who was described as "tall, thin, [and] clean shaven," was never identified.

-1-

with a photograph array. Blackshear identified defendant as the person who had robbed her and Thurmond. Thurmond did not identify anyone.

Defendant was charged with two counts of armed robbery and two counts of felony-firearm. The bench trial commenced in June 2019. Evidence of the pretrial identification was admitted, and Blackshear identified defendant at trial. Blackshear also testified that, at the time of the crimes, defendant had an "unbraided" hairstyle that was "higher on top[.]" Defendant's defense at trial was that Blackshear had improperly identified him as one of the perpetrators. Defendant presented evidence to support that he had cut his hair "completely off" on October 1, 2018, and that Blackshear's description of the perpetrator's hair was not consistent with defendant's hairstyle on October 2, 2018. This evidence was presented through the testimony of defendant's barber, the testimony of defendant, and two photographs that defendant had uploaded to social media on October 1, 2018.

Defendant was convicted as charged. Defendant moved the trial court for a new trial, arguing that the evidence established that defendant was not the perpetrator and that Blackshear had improperly identified him as the perpetrator. The trial court denied the motion. In doing so, the trial court reiterated that defendant's testimony and the testimony of his barber was incredible. Defendant was then sentenced as described above, and this appeal followed.

## II. IDENTIFICATION EVIDENCE

Defendant argues that evidence of Blackshear's pretrial identification of him and her identification of him at trial should have been precluded because of the unduly suggestive procedures employed by law enforcement. We disagree.

Defendant did not preserve this issue by objecting to the identification evidence at trial. *People v Posey*, 334 Mich App 338, 346; 964 NW2d 862 (2020), lv pending. "Thus, to succeed, [defendant] must show that there was an error, that the error was clear or obvious, and that the error affected his substantial rights." *Id*.

"A defendant's right to due process is implicated if an in-court identification was preceded by a suggestive out-of-court identification." *Id*. at 347. "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial." *Id*. (quotation marks and citation omitted). "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020).

In general, a photographic array is not suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotation marks omitted). "[W]hen the witness is shown only one person or a group in which one person is singled out in some way, [the witness] is tempted to presume that he is the person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (quotation marks and citation omitted). But mere "differences . . . in the physical characteristics of the individuals photographed" do not render a lineup impermissibly suggestive, unless the differences substantially distinguish the defendant

from other lineup participants. *Kurylczyk*, 443 Mich at 304-305, 312 (quotation marks and citations omitted).

Defendant argues that the photographic lineup was impermissibly suggestive because he was the only person who completely matched the description given by Blackshear. We disagree. Blackshear testified that the man who demanded her purse and Thurmond's purse was "[s]ort of heavy set," that he was between 20 to 30 years old, and that he had a "fuller face." Blackshear indicated that the man had "[s]ort of a kinky unbraided hair style." Blackshear also believed that the man had a beard. She described the man's "fuller face" and hair as his most distinguishing features. When asked about the length of the man's hair, Blackshear indicated that she did not consider his hair to be "long." Instead, "[i]t was more of a natural [hairstyle] that was higher in the top" and was "unbraided." Blackshear testified that she considered hair to be long if it went past someone's shoulders.[2]

The photograph array, which was admitted into evidence at trial, consists of six photographs, including a photograph of defendant. The photographs are all the same size and depict the individuals from the same angle (i.e., all facing forward and showing each man's head, neck, and shoulders). The men appear to be of similar age. All the men are African-American with similar complexions and with facial hair. Additionally, all but one man has what could be described as a "fuller face." While defendant is correct that his hair most closely matches Blackshear's description, this does not create "a substantial likelihood of misidentification." See *Kurylczyk*, 443 Mich at 318 (quotation marks and citations omitted). Indeed, with one exception, the men in the array appear to have unbraided hair. Additionally, contrary to defendant's argument on appeal, there is no indication from the photographs that defendant's beard is significantly longer than any of the other individuals' beards. Therefore, we conclude that the "[d]ifferences among [the lineup] participants" did not "substantially distinguish defendant from the other participants[.]" See *id*. at 312 (quotation marks and citation omitted). Importantly, there is also no indication that "improper police conduct created a substantial likelihood of misidentification." See *Sammons*, 505 Mich at 49 (quotation marks and citation omitted). Indeed, Blackshear denied that the investigating officer said "anything that would lead [her] to believe that the person" who had robbed her and Thurmond "was necessarily in th[e] pictures."

Furthermore, even if we determined that the lineup was impermissibility suggestive, "the evidence it produced could still be admissible[.]" *Sammons*, 505 Mich at 49 (quotation marks and citations omitted). When determining "whether an unnecessarily suggestive identification is reliable," we apply the following "nonexclusive list of factors":

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness'[s] degree of attention, (3) the accuracy of his [or her] prior description of the criminal, (4) the level of certainty demonstrated at the

---

[2] Defendant relies on Thurmond's description of the perpetrator to support that Blackshear's identification of defendant was unreliable. However, Thurmond's description is not relevant to whether the trial court properly admitted evidence of Blackshear's identification of defendant. Indeed, Thurmond testified after Blackshear.

confrontation, and (5) the time between the crime and the confrontation. [*Id*. at 50-51 (quotation marks and citations omitted).]

Courts can also consider the witness's "prior relationship with or knowledge of the defendant," and the "[a]ccuracy or discrepancies in the pre-lineup or showup description and [the] defendant's actual description." *Posey*, 334 Mich App at 348 (quotation marks and citation omitted).

Blackshear did not have a prior relationship with defendant. However, it was light outside when the crimes in this case were committed, and Blackshear testified that she was standing within five feet of defendant when he robbed her. Blackshear also testified that she and defendant "stared each other down." Thus, Blackshear was certainly close enough to view defendant's face at the time of the crimes. Blackshear also testified that there was a span of five minutes between when she exited her motor vehicle and when she ran toward the church. Although Blackshear testified that she was afraid, the evidence does not suggest that she was too frightened to accurately perceive or remember what was happening. Given Blackshear's description of the crimes, defendant's physical features, and defendant's clothing, her degree of attention was presumably strong. There is nothing in the record to suggest that Blackshear was not certain that defendant was the perpetrator. Indeed, she identified him within one minute of viewing the photograph array. There was also not a long length of time between the crimes and the identification. The crimes occurred on October 2, 2018, they were immediately reported to the police, and Blackshear was shown the photograph array on October 25, 2018. Additionally, although Thurmond did not identify defendant as the person who robbed her, Blackshear testified that she was closer to defendant during the crimes than her mother, thereby supporting that Blackshear had a better view of defendant.

In sum, it is not clear or obvious from the record that Blackshear lacked an independent basis for her identification of defendant. Therefore, defendant has failed to establish plain error. Because there was no valid legal basis to challenge Blackshear's pretrial identification and in-court identification of defendant, trial counsel was not ineffective for failing to object to the identification. See *Posey*, 334 Mich at 353 (counsel is not ineffective for failing to raise a futile objection).

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that he should receive a new trial because the great weight of the evidence failed to show that he committed the crimes of armed robbery and felony-firearm. We disagree.

"We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*. However, this Court "review[s] a trial court's determination of credibility for clear error. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008)

-4-

(quotation marks and citations omitted). "[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (quotation marks and citation omitted).

Defendant argues that the verdicts were against the great weight of the evidence because the trial court relied on Blackshear's identification of defendant as the perpetrator, which was based upon an unduly suggestive photographic lineup. However, as discussed earlier, there was nothing unduly suggestive about the lineup itself, and the trial court did not err by admitting the identification evidence arising from the photographic lineup. Additionally, although Thurmond did not identify defendant in the lineup, she offered some testimony at trial that corroborated Blackshear's description of the robber. Notably, both victims saw defendant's face before he displayed the gun, and defendant lived two blocks away from the scene of the crimes.

Defendant essentially argues that the defense's theory was more credible than the victims' testimony. However, we conclude that the trial court's determination that the testimony of defendant and defendant's barber was incredible was not clearly erroneous. Defendant's barber testified that he cut defendant's hair on October 1, 2018. However, other than indicating that the first of the month is when money "flows," the barber could not provide a clear answer as to how he knew that defendant's hair was cut the day before the crimes were committed. Indeed, the barber acknowledged that he could not "super remember" and that he had not checked his "books" to confirm that defendant had been in the barber shop that day. Additionally, although defendant testified that the barber had cut his hair "completely off" on October 1, 2018, and that he did not commit the crimes, the trial court clearly found this testimony to be incredible. "[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Dendel*, 481 Mich at 130 (alteration in original; quotation marks and citation omitted). In light of this record, we cannot conclude that the trial court's assessment of the witnesses' credibility was clearly erroneous.

Because the evidence presented at trial did not heavily preponderate against the guilty verdicts, defendant's argument that the trial court's verdicts were against the great weight of the evidence lacks merit. See *Lemmon*, 456 Mich at 642.

## IV. OFFENSE VARIABLE (OV) 1

Defendant argues that the trial court erred in assessing 15 points for OV 1, MCL 777.31. The prosecutor concedes that resentencing is required, and we agree.

This Court reviews de novo whether a trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "We review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

Defendant argues that the trial court improperly scored OV 1 at 15 points, which is scored when "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). Although defendant possessed a gun at the time of the crimes, neither Blackshear

nor Thurmond testified that defendant pointed the gun at or toward them or that defendant possessed "a knife or other cutting or stabbing weapon." Therefore, there was no evidence to support assessing 15 points for OV 1. In addition, defendant was charged with, and convicted of, armed robbery. Thus, defendant could not be assessed five points for OV 1. MCL 777.31(2)(e); *People v Greene*, 477 Mich 1129, 1130; 730 NW2d 478 (2007). Because removing 15 points from defendant's OV score changes the recommended guidelines minimum sentencing range to 42 to 70 months' imprisonment, MCL 777.62, resentencing is required, *People v Rodriguez*, 327 Mich App 573, 582-583; 935 NW2d 51 (2019).

## V. JAIL CREDIT

Defendant next argues that the trial court improperly calculated his jail credit. Because defendant failed to raise this argument before the trial court, we review for plain error affecting substantial rights. *People v Bailey*, 330 Mich App 41, 64; 944 NW2d 370 (2019).

The calculation of jail credit is governed by MCL 769.11b, which provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Defendant was incarcerated on February 25, 2019, and remained incarcerated until he posted bond on April 16, 2019, which is a total of 50 days. On June 19, 2019, defendant was convicted of the charged offenses and his bond was revoked. Defendant remained incarcerated from that point forward, and he was sentenced on July 22, 2019. Thus, defendant is entitled to jail credit for the 33 days he was incarcerated between June 19, 2019 to July 22, 2019. Accordingly, defendant is entitled to 83 days of jail credit. However, the trial court only assessed 71 days of jail credit.[3] The failure to properly award defendant his jail credit resulted in plain error affecting his substantial rights. We therefore remand to the trial court so that defendant's judgment of sentence can be amended to reflect that he is entitled to 83 days of jail credit.

## VI. COURT COSTS

Defendant argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional because it violates criminal defendants' due-process rights to appear before a neutral judge and it violates the separation-of-powers doctrine by preventing the judicial branch from carrying out its constitutionally assigned functions.[4] Defendant did not raise these arguments in the trial court,

---

[3] The presentence investigation report failed to account for the adjournment of defendant's sentencing hearing from July 10, 2019 to July 22, 2019.

[4] Defendant does not argue that the trial court acted unfairly in his particular case, but contends that the statute unconstitutionally deprives *all* criminal defendants of due process and that the statute incentivizes judges to convict *all* criminal defendants and impose court costs to raise

thereby rendering them unpreserved. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). We therefore review for plain error affecting defendant's substantial rights. See *id.*

Defendant challenges the imposition of the court costs on various constitutional grounds. However, after defendant filed his brief on appeal, this Court considered and rejected the arguments that defendant raises on appeal in *People v Johnson*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351308)*,* lv pending. Because we are bound by this Court's decision in *Johnson*, MCR 7.215(J)(1), defendant has failed to establish that the imposition of costs under MCL 769.1k(1)(b)(*iii*) constituted plain error.

## VII. MOTION TO REMAND FOR A *GINTHER*[5] HEARING

Defendant alternatively requests a remand for a *Ginther* hearing. Defendant filed two previous motions to remand. This Court denied the motions "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Romero*, unpublished order of the Court of Appeals, entered August 17, 2020 (Docket No. 350395); *People v Romero*, unpublished order of the Court of Appeals, entered December 9, 2020 (Docket No. 350395). Thus, we will again consider whether defendant is entitled to a remand.

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To demonstrate ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 218; 966 NW2d 437 (2020) (quotation marks and citations omitted).

With respect to defendant's first motion for remand, he argues in relevant part that remand is necessary so that an evidentiary hearing on the issue of whether trial counsel was ineffective for failing to object to the identification evidence can be held.[6] We conclude that defendant has not established that "development of a factual record" is necessary to determine if trial counsel was ineffective for failing to object to the identification evidence. See MCR 7.211(C)(1)(a). Indeed,

---

revenue for the courts. Thus, defendant raises a facial challenge to the statute. See *People v Johnson*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351308); slip op at 2, lv pending.

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] Defendant also argued that remand is necessary so that defendant could be resentenced as a result of the erroneous scoring of OV 1 and so that he could be awarded the appropriate amount of jail credit. For the reasons already discussed, we conclude that defendant is entitled to remand on those issues.

for the reasons already discussed, objecting to the evidence would have been futile. See *Posey*, 334 Mich at 353 (counsel is not ineffective for failing to raise a futile objection).

With respect to defendant's second motion for remand, defendant argues that trial counsel was ineffective for failing to obtain an expert "to analyze [defendant's] phone and the Exif metadata related to" defendant's October 1, 2018 social media postings. According to defendant, "[s]uch analysis would have been able to conclusively prove to the trial court the date, time, and possibl[e] location of the creation of the" photographs that were posted by defendant on social media. Although "[c]ounsel always retains the duty to make reasonable investigations," *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted), defendant has not made an offer of proof regarding the substance of any favorable testimony that a defense expert could have offered. There is no evidence that an expert would have testified that the photographs of defendant's hair were taken on October 1, 2018, as opposed to merely uploaded on social media on October 1, 2018.[7] Defendant's mere speculation that an expert could have provided favorable testimony is insufficient to show that trial counsel's failure to obtain or call an expert was objectively unreasonable, or to show that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. See *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) ("A defendant has the burden of establishing the factual predicate of his ineffective assistance claim.").[8] Importantly, Blackshear's identification of defendant did not rest solely on defendant's hair. Indeed, as already discussed, the evidence supports that Blackshear "stared" at defendant and was able to describe that he had a "fuller face" and facial hair, which is consistent with defendant's appearance in the photograph that defendant purports was taken on October 1, 2018. We again deny defendant's request for a remand for a *Ginther* hearing. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007); MCR 7.211(C)(1)(a).

---

[7] Defendant appears to acknowledge that photographs can be taken at an earlier date and then uploaded to social media at any subsequent date of the user's choosing. Therefore, it is possible that the photographs were taken well before October 1, 2018.

[8] We acknowledge that defendant indicated in his second motion to remand that his appellate counsel was unable to unlock defendant's cellphone because defendant could not recall his password. However, defendant has been provided ample time to have the phone unlocked and forensically examined. Oral argument was originally scheduled to be held on July 7, 2021. This Court adjourned case call, held defendant's appeal in abeyance for 56 days so that defendant's cellphone could be forensically examined, and indicated that the parties could file a motion to remand "once the results of the forensic examination of the phone w[ere] complete." *People v Romero*, unpublished order of the Court of Appeals, entered June 29, 2021 (Docket No. 350395). On September 1, 2021, this Court held that the period of abeyance was extended to October 19, 2021. *People v Romero*, unpublished order of the Court of Appeals, entered September 1, 2021 (Docket No. 350395). A renewed motion to remand was never filed, and defendant has not filed any documents concerning the forensic examination of the cellphone. See MCR 7.216(A)(4) (permitting additions to the record in certain circumstances).

## VIII.  CONCLUSION

We affirm defendant's convictions, but remand for resentencing and for the trial court to amend the judgment of sentence to reflect that defendant is entitled to 83 days of jail credit.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron